**Kerry L. MEREDITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 89A04–0703–CR–148.**

Court of Appeals of Indiana.

May 15, 2008.

E. Thomas Kemp, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION ON REHEARING

NAJAM, Judge.

The State has filed a petition for rehearing asking that we reconsider our holding that the trial court abused its discretion when it admitted into evidence cocaine found in the car of Kerry Meredith. *See Meredith v. State*, 878 N.E.2d 453 (Ind.Ct. App.2007) (*"Meredith I"*). In particular, the State asserts that the cocaine was admissible because it was obtained pursuant to a legitimate traffic stop for an improperly displayed temporary vehicle tag. We grant the State's petition for the sole purpose of clarifying that, while the initial traffic stop was legitimate, the investigating officer's probable cause or reasonable suspicion to detain Meredith had expired well before the discovery of cocaine in Meredith's vehicle.

A full statement of facts relevant to this appeal is described in our prior opinion and need not be recounted here at length. *See id.* at 454. Most notable to the State's petition for rehearing are these facts: when Officer Lackey pulled over Meredith's vehicle, a license plate was not apparent, leading Officer Lackey to initiate a traffic stop of Meredith's vehicle; after Officer Lackey exited his vehicle and approached Meredith's, Officer Lackey saw a temporary vehicle tag attached to the inside of Meredith's rear window; and upon seeing the temporary tag, Officer Lackey saw the expiration date and observed that it was still valid. But after having determined that the temporary tag was valid, Officer Lackey continued to detain Meredith and eventually obtained Meredith's consent to search the vehicle, which led to the discovery of the cocaine.

■ The threshold issue here is whether Officer Lackey had a reasonable suspicion to detain Meredith and, if so, on what grounds. As discussed in our prior opinion, it was within Officer Lackey's lawful discretion to initiate a traffic stop of Meredith on the grounds that Officer Lackey could not determine the validity of Meredith's temporary tag. We then went on to discuss how, once Officer Lackey had satisfied that purpose, Meredith could not be further detained. *See Meredith I*, 878 N.E.2d at 455 (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999)). Thus, in an attempt to circumvent our reasoning in *Meredith I*, the State asserts on rehearing that the traffic stop continued to be justified after Officer Lackey verified the temporary tag's validity because that tag continued to be improperly displayed. We cannot agree.

■ "A police officer may stop a vehicle when he observes a minor traffic violation. A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause." *Ransom v. State*, 741 N.E.2d 419, 421 (Ind.Ct.App.2000) (citation omitted), *trans. denied.*

It is the requirement of reasonable suspicion which strikes the balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy. Reasonable suspicion entails some minimum level of

objective evidentiary justification. Due weight must be given, not to the officer's inchoate and unparticularized suspicion or "hunch" but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion.

*Cash v. State*, 593 N.E.2d 1267, 1268–69 (Ind.Ct.App.1992) (citations omitted).

In support of its position that Officer Lackey's objective justification for the traffic stop continued after he verified the temporary tag's validity, the State first references Indiana Code Sections 9–18–2–26(a)(3) and 9–19–6–4(e), each of which mandates display requirements for perma-nent license plates.[1] The State also cites *Merritt v. State*, 829 N.E.2d 472, 476 (Ind. 2005), in which our Supreme Court held that a driver's failure to comply "with the Indiana statutory requirements concerning placement, secure attachment, illumination and legibility" of a permanent license plate "may serve as a basis for reasonable suspicion for law enforcement officers to make a traffic stop." But there are neither statutory nor regulatory requirements concerning the display of the temporary vehicle tag at issue here. *See Merritt*, 829 N.E.2d at 475–76 n. 14; *see also* Ind.Code § 9–18–26–10 (2005).[2] Accordingly, those provisions of the Indiana Code, and *Merritt*, do not apply.

Recognizing the lack of legislative authority, agency regulation, and case law on the display of temporary tags such as

1. Specifically, Indiana Code Section 9–18–2–26(a)(3) (2005) states, in relevant part:

 (a) License plates shall be displayed as follows:

 * * *

 (3) For every other vehicle, upon the rear of the vehicle.
 (b) A license plate shall be securely fastened, in a horizontal position, to the vehicle for which the plate is issued:
 (1) to prevent the license plate from swinging;
 (2) at a height of at least twelve (12) inches from the ground, measuring from the bottom of the license plate;
 (3) in a place and position that are clearly visible;
 (4) maintained free from foreign materials and in a condition to be clearly legible; and
 (5) not obstructed or obscured by tires, bumpers, accessories, or other opaque objects.
 (c) The bureau [of motor vehicles] may adopt rules the bureau considers advisable to enforce the proper mounting and securing of license plates on vehicles consistent with this chapter.
 And Indiana Code Section 9–19–6–4(e) requires motor vehicles to have the rear registration plate illuminated such that "the plate [is] clearly legible from a distance of fifty (50) feet to the rear."

2. Indiana Code Section 9–18–26–10 provides as follows:

 (a) The bureau [of motor vehicles] may issue an interim license plate to a dealer or manufacturer who is licensed and has been issued a license plate under section 1 [I.C. § 9–18–26–1] of this chapter.
 (b) The bureau shall prescribe the form of an interim license plate issued under this section. However, a plate must bear the assigned registration number and provide sufficient space for the expiration date as provided in subsection (c).
 (c) Whenever a dealer or manufacturer sells a motor vehicle, the dealer or manufacturer may provide the buyer with an interim license plate. The dealer shall, in the manner provided by the bureau, affix on the plate in numerals and letters at least three (3) inches high the date on which the interim license plate expires.
 (d) An interim license plate authorizes a motor vehicle owner to operate the vehicle for a maximum period of thirty-one (31) days after the date of delivery of the vehicle to the vehicle's owner or until a regular license plate is issued, whichever occurs first.
 (e) A motor vehicle that is required by law to display license plates on the front and rear of the vehicle is only required to display a single interim plate.

Meredith's, the State asserts that our Legislature intended such temporary tags to be displayed in the same manner as permanent license plates. But the State's argument cuts both ways. While our Legislature has expressly stated the display requirements for permanent license plates, *see* I.C. §§ 9–18–2–26; 9–19–6–4, it has expressly delegated the display requirements of some temporary tags to the bureau of motor vehicles.[3] For example, Indiana Code Section 9–18–7–1, which describes requirements for the temporary vehicle tag necessary when one moves in or out of Indiana, among other situations, states that such permits "shall be displayed on a vehicle in a manner determined by the bureau [of motor vehicles]." *See also* I.C. § 9–18–7–1.5. Thus, there is no clear reason[4] to suppose that our Legislature intended the temporary tag at issue here to be treated more like a permanent license plate than like other temporary tags.

Nor are we persuaded by the State's reliance on *State v. Phillips,* 828 N.E.2d 441 (Ind.Ct.App.2005). In *Phillips,* a police officer noticed that Phillips' vehicle did not have a license plate. The officer initiated a traffic stop around 12:30 a.m. and approached the vehicle. In doing so, the officer "saw what appeared to be a temporary tag in the back window, but he could not read the numbers or letters." *Id.* at 442. The officer continued to detain Phillips, who refused a chemical test, and in the subsequent criminal proceeding the trial court granted Phillips' request to suppress the evidence. On appeal, we reversed, noting that Phillips had failed to display a clearly visible and clearly legible license plate.

While *Phillips* bears some similarities to the instant case, it is most notable in its distinction. Again, the facts of *Phillips* were that, even after approaching the defendant's vehicle, the detaining officer was unable to determine if there was a license plate and, if so, whether that plate was valid. *See id.* at 442–43. But those are not the facts of this case, where Officer Lackey, upon approaching Meredith's vehicle, was able to read Meredith's temporary tag clearly and determine that it was valid. Hence, whereas the officer in *Phillips* was justified in prolonging Phillips' detention, Officer Lackey's justification for detaining Meredith expired once Officer Lackey had seen and determined that Meredith's temporary plate was valid.

■ Finally, the State contends that Officer Lackey's extended detention of Meredith was in good faith reliance on the proposition that temporary tags must be displayed in the same manner as permanent license plates. We are again not persuaded. "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *Ransom,* 741 N.E.2d at 422 (citing *Cash,* 593 N.E.2d at 1269). The State has failed to demonstrate that the manner in which the temporary plate was displayed violated any statute or regulation. Instead, Officer

---

3. We note that our Legislature has vested the bureau of motor vehicles with the authority to "adopt and enforce rules ... that are necessary to carry out this title [Title 9]." I.C. § 9–14–2–2.

4. Again, because our Supreme Court has expressly stated that Indiana Code Sections 9–

18–2–26 and 9–19–6–4 apply only to permanent license plates, we cannot say that those Sections' references to "license plates" has any bearing on the use of the phrase "interim license plates" in Indiana Code Section 9–18–26–10. *See Merritt,* 829 N.E.2d at 475–76 n. 14.

Lackey's belief that Meredith's display of the temporary tag constituted a violation was mistaken. As such, as a matter of law, his extended detention of Meredith was not in good faith. *See id.*

Absent legislative, regulatory, or judicial authority, there was no "objectively justifiable reason" for Officer Lackey's continued detention of Meredith on the grounds of an improperly displayed temporary tag. *See id.* at 421. Rather, Officer Lackey's extended detention of Meredith for that reason alone lacked the "substantial and objective standard or rule to govern the exercise of discretion" necessary to prevent "intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches." *See Cash,* 593 N.E.2d at 1269 (discussing *Delaware v. Prouse,* 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Thus, we must conclude the following: (1) Officer Lackey had an objectively justifiable reason to initiate a traffic stop for the purpose of determining the validity of Meredith's temporary tag; and (2) Officer Lackey was without an objectively justifiable reason to continue Meredith's detention solely on the basis of an improperly displayed temporary tag where, as here, Officer Lackey was able to clearly see and verify the temporary tag's validity when he approached the rear of Meredith's vehicle. Hence, we clarify our prior opinion in those respects. As we conclude that Officer Lackey's only objectively justifiable reason to detain Meredith was for the purpose of determining the validity of Meredith's tag, we reaffirm our prior holding that, once Officer Lackey had satisfied that purpose, Meredith could not be further detained. Judge Tacha's opinion in *United States v. McSwain,* 29 F.3d 558 (10th Cir.1994), is directly on point and supports our holding.

The State's petition for rehearing is granted, and our opinion in *Meredith I* is clarified as stated above. In all other respects, we affirm our prior opinion.

BAILEY, J., and CRONE, J., concur.