Kerry L. MEREDITH, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A04–0703–CR–148.

Court of Appeals of Indiana.

Dec. 28, 2007.

E. Thomas Kemp, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kerry Meredith appeals his conviction for Possession of Cocaine, as a Class D felony, following a jury trial. He presents a single dispositive issue for our review, namely, whether the trial court abused its discretion when it admitted into evidence cocaine found in his car.

We reverse.

### FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on October 13, 2005, Meredith was driving a vehicle in Richmond. Meredith was stopped at a red stoplight when Richmond Police Department Officer John Lackey pulled up behind him. Officer Lackey did not see a license plate displayed on Meredith's vehicle, so he shined his spotlight on the rear of the vehicle. Officer Lackey then saw a temporary vehicle tag in the rear window of the vehicle, but he could not read the

expiration date. Accordingly, Officer Lackey initiated a traffic stop.[1]

As Officer Lackey approached Meredith's vehicle on foot, he saw the expiration date on the temporary tag and observed that it was still valid. Officer Lackey proceeded to the driver's side door of the vehicle and began talking to Meredith and his passenger. After Officer Lackey smelled an odor of alcohol coming from the vehicle, he asked Meredith to submit to a portable breath test. Meredith complied, and the test did not indicate that Meredith had been drinking. Officer Lackey then asked Meredith for permission to search the vehicle, and Meredith consented. Officer Lackey found a substance later determined to be cocaine on the floor of the vehicle behind the driver's seat and in the glove box.

The State charged Meredith with possession of cocaine. Meredith moved to suppress the evidence obtained during the search of his vehicle, but the trial court denied that motion following a hearing. A jury found Meredith guilty as charged, and the trial court entered judgment and sentence accordingly. This appeal ensued.

### DISCUSSION AND DECISION

Meredith contends that the trial court erred when it denied his motion to suppress evidence. In particular, he maintains that Officer Lackey's traffic stop violated the Fourth Amendment to the United States Constitution and that the evidence of his cocaine possession should have been excluded at trial. Although he originally challenged the admission of the evidence through a motion to suppress, Meredith appeals following a completed trial and challenges the admission of such evidence at trial. "Thus, the issue is . . .

---

1. Officer Lackey testified that the tag was improperly displayed and that it constituted an infraction. However, no ticket was issued, nor did the State prosecute Meredith on this alleged infraction.

appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App. 2003). We have indicated that our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App. 2000), *trans. denied.* However, we must also consider the uncontested evidence favorable to the defendant. *See id.*

▬ Meredith contends that Officer Lackey's seizure of him violated his rights under the Fourth Amendment to the United States Constitution, which provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the States through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998). The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Moultry v. State*, 808 N.E.2d 168, 170 (Ind.Ct. App.2004). However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity

"may be afoot." *Id.* at 170–71 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

▬ A police officer may stop a vehicle when he observes a minor traffic violation. *Ransom v. State*, 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied.* Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "If the ... detention exceeds its proper investigative scope, the seized items must be excluded under the 'fruits of the poisonous tree doctrine.'" *Id.*

Here, at the suppression hearing, Officer Lackey testified that, at the time he stopped Meredith's vehicle, he could not read the expiration date on the temporary license tag displayed in the vehicle's rear window. As he approached the driver's side of Meredith's vehicle on foot, Officer Lackey saw that the expiration date on the tag indicated that it was valid. Officer Lackey then proceeded to ask Meredith for his driver's license and registration.

In *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994), the United States Court of Appeals for the Tenth Circuit addressed the Fourth Amendment implications of a traffic stop involving almost identical circumstances. In *McSwain*, a police officer initiated a traffic stop after he could not read the expiration date on a temporary registration sticker on the defendant's vehicle. As the officer ap-

proached the vehicle on foot, he read the expiration date, which indicated that the tag was valid. The officer proceeded to question the defendant and asked for his license and registration. When the officer ran a computer check, he learned that the defendant's driver's license was suspended and that he had a prior record for drug and gun violations. The officer then asked the defendant whether he had any guns or drugs in the vehicle, and the defendant replied in the negative. The officer then asked the defendant for consent to search the vehicle, and he agreed. The officer found a bag containing cocaine during the course of that search.

In *McSwain*, writing for the United States Court of Appeals, Circuit Judge Tacha explained the limits of a lawful investigative detention under the Fourth Amendment, on these facts, as follows:

> Though we have held in several cases that an officer conducting a routine traffic stop may inquire about "identity and travel plans," and may "request a driver's license and vehicle registration, run a computer check, and issue a citation," [the cases cited by the government in support of that position] are inapposite. They all involve situations in which the officer, at the time he or she asks questions or requests the driver's license and registration, still has some "objectively reasonable articulable suspicion" that a traffic violation "has occurred or is occurring." Such cases stand in sharp contrast to the facts of the instant case: Trooper Avery's reasonable suspicion regarding the validity of Mr. McSwain's temporary registration sticker was completely dispelled *prior* to the time he questioned Mr. McSwain and requested documentation. Having no "objectively reasonable articulable suspicion that illegal activity ha[d] occurred or [was] oc-

> curring," Trooper Avery's actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.

> The government asserts that not allowing an officer to request a driver's license and registration in this type of case will require the officer to "stop a vehicle, approach the vehicle on foot, observe it, then walk away, get in his police car, drive away and wave, leaving the stopped citizen to wonder what had just occurred." Our holding does not require such absurd conduct by police officers. As a matter of courtesy, the officer could explain to drivers in Mr. McSwain's circumstances the reason for the initial detention and then allow them to continue on their way without asking them to produce their driver's license and registration.

*Id.* at 561–62 (citations omitted). The court further held that the defendant's consent to search was not voluntary under the totality of the circumstances. *Id.* at 562.

■ Likewise, here, we conclude that once Officer Lackey had verified the valid expiration date on the temporary tag, and prior to any personal contact with Meredith, the objective purpose for the investigative detention had been satisfied. Thus, Officer Lackey was constitutionally barred from detaining Meredith any further.[2] But Officer Lackey pushed the envelope beyond constitutional limits once, if not twice. First, Officer Lackey continued to detain Meredith without probable cause or reasonable suspicion after he had confirmed that the temporary tag was valid. And Lackey then detained Meredith after

**2.** Again, no ticket was issued for improper     display of the temporary tag.

he had determined that Meredith had not consumed any alcohol.[3]

The evidence Officer Lackey obtained after asking Meredith to consent to a search of the vehicle was illegally procured and should have been excluded from trial. There is no other evidence that Meredith possessed cocaine. We hold as a matter of law that Meredith's conviction for possession of cocaine must be reversed.

Reversed.

BAILEY, J., and CRONE, J., concur.

---

3. Meredith contends that he was entitled to a *Pirtle* warning before giving his consent to search, but we need not address that issue since we reverse on other grounds.